# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER SHOUSE, ALBERT LACHOWICZ ex rel. JENNIFER PAXON, and AMY LINDE on their own behalf and on behalf of all others similarly situated, | CIVIL ACTION NO. 3:10-CV-0175 |
| Plaintiffs | (JUDGE CAPUTO) |
| v. | |
| NATIONAL CORRECTIVE GROUP, INC., (d/b/a "CORRECTIVE SOLUTIONS"), LEVINE LEICHTMAN CAPITAL PARTNERS, INC., LEVINE LEICHTMAN CAPITAL PARTNERS III, LP., and LEVINE LEICHTMAN CAPITAL PARTNERS III, LLC, | |
| and | |
| ANDREW J. JARBOLA III, Lackawanna County, Pennsylvania District Attorney, | |
| Defendants | |

## **MEMORANDUM**

Presently before the Court are Motions to Dismiss Plaintiffs' ("Shouse") Amended Complaint brought by Defendant National Corrective Group ("NCG"), Defendant Jarbola ("Jarbola") and Defendants Levine Leichtman Capital Partners, Inc., ("LLCP") and Levine Leichtman Capital Partners III, L.P. ("LLCP III"). For the reasons discussed below, Defendant NCG's Motion to Dismiss will be granted in part and denied in part, Defendant Jarbola's Motion to Dismiss will be granted, and the Court will allow Plaintiffs jurisdictional discovery of Defendants LLCP and LLCP III's before deciding their Motion to Dismiss.

## BACKGROUND

The instant suit arises out of a "bad check restitution program" operated by NCG under the auspices of local district attorneys' offices. Shouse and the other plaintiffs are residents of various counties in Pennsylvania who have been targeted by this program and allege to have been subject to abusive and unlawful practices as a result. Shouse' Complaint alleges as follows.

NCG is the latest iteration of a business enterprise that was originally begun by Donald Mealing. Mealing founded American Corrective Counseling Services ("ACCS") in 1987. His original business model was to establish a bad check collection agency that would operate under the auspices of county district attorneys, a model designed to increase the likelihood of recovery of the debts. (Am. Compl. ¶ 18.) In 2004, Equity Pacific Advisors ("EPA"), with financing from LLCP III, bought Mealing's business. (Am. Compl. ¶ 19.) In exchange for providing financing, LLCP II was granted securities in the new company. When the business began to suffer after facing several class action lawsuits regarding its business practices, ACCS was unable to meet its payment obligations to LLCP III. As a result, LLCP began exerting greater control over the day to day operations. Facing more lawsuits, LLCP took ACCS into bankruptcy. (Am. Compl ¶ 26.) Several months after the bankruptcy filing, LLCP III bought ACCS's assets and formed a new wholly owned subsidiary, NCG. LLCP continues to own, operate, and control NCG. (Am. Compl. ¶ 31.)

NCG is a private debt-collection company that specializes in collecting dishonored checks. (Am. Compl. ¶ 2.) As stated above, what is unique about NCG's business model is that it operates under the purview of local district attorney's offices. Under the agreements that NCG has with these district attorneys, including Jarabola, NCG is allowed to use the

district attorney's office, official letterhead, and signature in communicating with individuals who have issued checks that have been dishonored. (Am. Compl. ¶ 3.) Shouse contends that these communications are designed to intentionally mislead the recipient into believing that they are dealing with the district attorney's office when in fact they are dealing with a private debt collection agency, and that they are then essentially coerced into paying for an expensive "diversion" program under the implicit threat that unless they do so they will be criminally prosecuted. (Am. Compl. ¶ 5.)

Shouse also alleges that after establishing these bad check diversion programs with local district attorneys, NCG would receive bad checks directly from retailers, rather than through the district attorney's office, in contravention to Pennsylvania law and the terms of their agreements with the district attorneys. (Am. Compl. ¶ 41.)

Shouse filed the instant suit as a purported class action on January 25, 2010, (Doc. 1) and amended her Complaint on April 19, 2010 (Doc. 25). In her Amended Complaint, Shouse brought claims for violations of the RICO statute (Count I), the Fair Debt Collection Practices Act ("FDCPA") (Count II), the Fair Credit Extension Uniformity Act (Count III); the Unfair Trade Practices and Consumer Protection Law (Count IV); 42 U.S.C. § 1983 (Counts V and VI), the Pennsylvania Constitution (Count VII), Negligent Misrepresentation (Count VIII), and Unjust Enrichment (Count IX). Defendants then filed Motions to Dismiss. NCG, in their Brief in Support of their Motion to Dismiss, (Doc. 36), argues that they are immune from suit under an exception to the Fair Debt Collection Practices Act that shields them from liability. They also argue that Shouse has not pled enough facts to make out a legally cogent claim for a violation of her rights under federal law. D.A. Jarbola, in his Brief in Support of his Motion to Dismiss, (Doc. 31) argues that he is immune from suit on absolute and

3

qualified immunity grounds. In their Brief in Support of their Motion to Dismiss, (Doc. 72) LLCP and LLCP III argue that the Court cannot validly exercise person jurisdiction over them.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The

4

Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

**I.     NCG's Motion to Dismiss**

    **A.     The FDCPA Exception for Pretrial Diversion Programs for Bad Check Offenders**

Defendant NCG's Motion to Dismiss will be denied because Shouse has pled sufficient facts to make a claim that 15 U.S.C. § 1692p does not apply to NCG.

Shouse alleges that NCG has violated the FDCPA with its collection tactics and business strategy.

> The Fair Debt Collection Practices Act prohibits the use of abusive, deceptive, and unfair debt collection practices by persons engaged in the business of collecting debts owned by consumers to third parties.

H.R. Rep. No. 99-405 (1985).

NCG, in its Reply, does not defend their practices specifically but instead points to a 2006 amendment to the FDCPA. As NCG rightly points out, 15 U.S.C. § 1692p was added to the FDCPA and created an explicit exception for district attorney-sanctioned pretrial diversion programs for alleged bad check offenders. The exception states that:

> [A] private entity shall be excluded from the definition of a debt collector. . . if a State or district attorney establishes, within the jurisdiction of such State or district attorney and with respect to alleged bad check violations. . . a pretrial diversion program for alleged bad check offenders who agree to participate voluntarily in such program to avoid criminal prosecution. 15 U.S.C. § 1692p.

Shouse, on the other hand, plausibly contends, for purposes of a Motion to Dismiss, that NCG does not meet the requirements found in the statute to successfully invoke the exception. Shouse argues that while district attorney approval is a *necessary* condition for § 1692p to apply, it is not *sufficient*, and that NCG has violated the safeguards put in place by Congress to make sure this exception is not abused. Primarily, Shouse points to the "voluntarily" language found in § 1692p and argues that the NCG bad check diversion program does not present itself as "voluntary" to the individuals who receive their notices in the mail. For purposes of the Motion to Dismiss, the Court concurs. First, the notice has the insignia of the district attorney's office and the district attorney's name prominently across the top of it. (Pl. Ex. B.) Then, in all capital letters, the notice states: "Official Notice - Immediate Attention Required." (Id.) It continues:

> This Office has received a report(s) of criminal activity alleging you have violated Title 18, Section 4105 of the Pennsylvania State Statutes, Issuing a Fraudulent Check. If the check is less than $200, a conviction under this statute, is a

6

Summary Offense and punishable by up to a $300 fine. If the check is more than $200, a conviction under this statute is a MISDEMEANOR and punishable by up to a $5,000 fine and/or two (2) years in jail. . .

However, you may avoid a court appearance by participating in the Luzerne County District Attorney Diversion Program.

Id.

Although the notice does go on to state that "[t]he Diversion Program is an optional alternative to court proceedings," (Id.) this sentence is virtually drowned in a sea of capital lettering and "required" language that would clearly make the least sophisticated reader, or even a sophisticated one, believe that they better respond to the notice. Further, as stated in Plaintiff's Complaint, all the contact information is *not* for the district attorney's office, as it arguably purports to be, but instead for NCG. As a result, an individual faced with such a notice and calling the contact number wishing to dispute the claim would be greeted on the phone by an NCG employee whose objective is solely to get the individual to pay their balance in full. In the Court's view, Shouse has pled sufficiently that NCG is not within the exception found at § 1692p of the FDCPA. Although Shouse brings up further arguments as to why this exception should not apply, the Court need not address them here since it has concluded that § 1692p does not apply for purposes of NCG's Motion to Dismiss.

### B.     Plaintiffs' 42 U.S.C. § 1983 Claims

Shouse has not pled facts sufficient to state a claim for a violation of her Fourteenth Amendment procedural due process rights under 42 U.S.C. § 1983. As a result, this Count of her Amended Complaint will be dismissed. 42 U.S.C. § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . ..

42 U.S.C. § 1983.

Money has long been recognized as a protected by procedural due process. *See e.g., Board of Regents v. Roth*, 408 U.S. 564 (1972). It has been established that a private entity acting jointly with a state official to deprive an individual of private personal property can be characterized as a "state actor" for Fourteenth Amendment purposes. *See e.g., Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). Furthermore, procedural due process requires an impartial arbiter to ensure the fairness and disinterestedness of the procedures. *See e.g., Rogin v. Bensalem Twp.*, 616 F.2d 680 (3d Cir. 1980). However, allegations of mere verbal harassment or threats, do not state a claim under 42 U.S.C. 1983. *Burkholder v. Newton*, 116 Fed. Appx. 358 (3d Cir. 2004).

Shouse and the other plaintiffs claim that NCG, acting under the auspices of local district attorney's offices, deprived them of their property, namely money, without proper due process, but rather through a series of misleading and coercive notices. As distasteful as some of NCG's business practices are alleged to be, their alleged threats and intimidation do not rise to the level of a violation of due process. Shouse could have availed herself of counsel, which she and the other plaintiffs ultimately did, and Shouse herself never actually paid any money to NCG. Threats are just that, threats, and NCG did not and could not, on their own, file criminal charges against the plaintiffs. As a result, the Court finds that Shouse's allegations of NCG's violation of her procedural due process rights does not make out a claim for relief under § 1983 for purposes of the Motion to Dismiss. As a result, NCG's

8

Motion to Dismiss this Count of the Amended Complaint will be granted.

### C. Abstention, Federalism, and Comity

The Court will not abstain from hearing the instant suit. In their Brief, Defendants argue that the Court should either apply *Burford* abstention or principles of federalism and comity and not exercise jurisdiction in this case. The Court disagrees.

The Court begins by noting that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). *Burford* abstention was designed to allow federal courts to abstain in cases where the state courts were likely to have greater expertise in a complex area of state law. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). NCG's reliance on this doctrine is misplaced for two reasons. Firstly, *Burford* was designed to be applied in *diversity* actions, not ones interpreting federal law, as the suit here. Secondly, pre-complaint diversionary programs can hardly be seen as being as complex as, for instance, oil drilling regulations in Texas – the area of state law in play in *Burford*.

NCG's comity and federalism arguments are of no avail since a main underpinning of Shouse's Complaint is that the type of collection business NCG is running is precisely *not* authorized by the Pennsylvania legislature. As a result, federalism and comity would surely not be upset if in fact NCG and the district attorney's office were running a diversionary program noxious to state law.

In conclusion, the Court will not dismiss the instant suit on abstention or federalism grounds.

## II.     D.A. Jarabola's Motion to Dismiss

### A.     Absolute Immunity

Jarabola's Motion to Dismiss will be granted because he is entitled to absolute immunity from the instant suit. It is well established that state prosecuting attorneys are absolutely immune from liability under 42 U.S.C. § 1983 for actions related to the initiation and presentation of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Following *Imbler*, the Third Circuit has eschewed a bright-line test in analyzing the immunity issue in favor of a "functional approach." Elaborating on this approach, the Third Circuit has held that while prosecutors are absolutely immune from conduct associated with the judicial phase of the criminal process, only *qualified* immunity is available for conduct related to the prosecutor's administrative or investigative roles. *See e.g., Rose v. Bartle*, 871 F.2d 331 (3d 1989). Prosecutors bear the "heavy burden" of establishing their entitlement to absolute immunity, as there is a presumption in the Third Circuit that qualified, rather than absolute, immunity is appropriate. *Odd v. Malone*, 538 F.3d 202 (3d 2008). To overcome this presumption, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Odd*, 538 F.3d at 208, (*quoting Yarris v. County of Del.*, 465 F.3d 129 (3d Cir. 2006)).

The instant suit deals with a "bad check restitution program." Such a program is designed to be an alternative to criminal prosecution. Oversight over such a program is by definition intimately related to Jarabola's prosecutorial powers, as it concerns who the district attorney will and will not bring criminal charges against. While there is certainly an administrative aspect in play here, the thrust of the program is squarely within Jarabola's prosecutorial discretion. As a result, Jarabola is entitled to absolute immunity from the

instant suit. Since the Court has determined that absolute immunity applies to Defendant Jarabola, it need not discuss Jarabola's qualified immunity arguments at this time.

### III. LLCP and LLCP III's Motion to Dismiss

#### A. Personal Jurisdiction

The Court will allow Plaintiffs jurisdictional discovery of Defendants LLCP and LLCP III before deciding the Motion to Dismiss.

While the Court can accept Plaintiff's allegations regarding jurisdiction as true for purposes of the Motion to Dismiss, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction," *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992) (internal citation omitted).

District courts are permitted to exercise personal jurisdiction over a nonresident to the extent allowed under the laws of the state where the district court sits. Fed. R. Civ. P. 4(e). Pennsylvania retains personal jurisdiction over nonresidents to the fullest extent permitted by the United States Constitution. 42 Pa. C.S. § 5322(b). Therefore, its reach is coextensive with the Due Process Clause of the Fourteenth Amendment. In analyzing personal jurisdiction under the Due Process Clause, the United States has long used what is commonly referred to as the "minimum contacts" test. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945). The defendant must be shown to have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316. This has evolved into a two-part test: first, the court looks at the nature of the contacts with the forum, and then, second, it determines whether the exercising of

jurisdiction would be fair to the defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

Furthermore, "[u]nder Pennsylvania law personal jurisdiction of a non-forum co-conspirator may be asserted . . . where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum co-conspirator was aware or should have been aware of those acts." *Santana Prod., Inc. v. Bobrick Washroom Equip.*, 14 F.Supp. 2d. 710, 718 (M.D.Pa. 1998) (internal citation omitted.)

For the non-conspiracy counts of their complaint, Plaintiffs not only argue that Defendant essentially controls NCG, but also that Defendant is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA") such that the substantial amount of business activities Defendant conducts in Pennsylvania through NCG allows the Court to exercise persona jurisdiction over them.

"To state a claim under the FDCPA, a plaintiff must allege that defendants engaged in prohibited practices in an attempt to collect a 'debt'." *Dolente v. McKenna*, No. 95-7142, 1996 WL 304850, at *2 (E.D.Pa. June 6, 1996). 15 U.S.C. § 1692a(6) states:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Related to this last point is the issue of whether or not the Court can exercise jurisdiction over the non-forum parent of a subsidiary company doing business in this forum. In the Third Circuit, where the separation between a corporate parent and its subsidiary is "real" and not merely formal, a court does not have jurisdiction over the non-resident parent. *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir.

1972) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)). However, the court will have personal jurisdiction if the separateness of the two corporate entities has been disregarded or if the subsidiary is merely the alter ego or agent of the parent. *Clark v. Matsushita Elec. Indus. Co., Ltd.*, 811 F.Supp. 1061, 1067 (M.D.P.A. 1993) (internal citation omitted.) The agency and alter ego theories center on control. *Clark*, 811 F.Supp. at 1068. For a subsidiary to be considered the alter ego of its parent corporation, "the degree of control exercised by the parent must be greater than normally would be associated with common ownership and directorship." *Savin Corp. v. Heritage Copy Prod., Inc.*, 661 F.Supp. 463, 468 (M.D.P.A. 1987). These factors include: ownership of all or most of the stock of the related corporation; common officers and directors; a common marketing image; common use of a trademark or logo; common use of employees; an integrated sales system; and, the receipt by the officers of the related corporation of instructions from the principal corporation. *Savin*, 661 F.Supp. at 469.

In this case, Plaintiffs contend that Defendant exercises control over NCG through providing all of NCG's capital funding; providing management oversight of all aspects of NCG's operations, including marketing, corporate communications, and the contracts between NCG and the local district attorneys; reviewing and approving collection tactics; managing NCG's legal affairs; and picking the Board of Directors. Plaintiffs also contend that Defendant has been effectively in control of NCG since its previous incarnation as ACCS, and that it created NCG to purchase ACCS's assets after it put ACCS into bankruptcy in order to avoid judgments in previously-brought class-action suits against ACCS. Defendant argues that even if all of these facts are true, which it disputes, this still does not demonstrate sufficient "control" over its subsidiary NCG such that the Court exercising personal jurisdiction over it would be proper.

Since at this point the burden is on the Plaintiffs to demonstrate with *facts*, not mere allegations, that personal jurisdiction over Defendants LLCP and LLCP III is proper by a preponderance of evidence, the Court will grant Plaintiffs limited jurisdictional discovery into three areas: (1) the nature and extent of Defendants LLCP and LLCP III's "awareness" of Defendant NCG's business practices in Pennsylvania; (2) Defendants LLCP and LLCP III's role in the creation of Defendant NCG; and (3) what Defendants LLCP and LLCP III knew about the nature of ACCS's business and its practices when LLCP III put up the original financing for Equity Pacific Advisors to purchase ACCS in 2004.

## **CONCLUSION**

For the foregoing reasons, Defendant NCG's Motion to Dismiss (Doc. 35) will be granted in part and denied in part, Defendant Jarbola's Motion to Dismiss (Doc. 30) will be granted, and Defendants LLCP and LLCP III's Motion to Dismiss (Doc. 72) will not be decided until Plaintiffs have had a chance to conduct jurisdictional discovery into the three areas outlined above. An appropriate order follows.

 11/30/10                                                         /s/ A. Richard Caputo
Date                                                                A. Richard Caputo
                                                                       United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER SHOUSE, ALBERT LACHOWICZ ex rel. JENNIFER PAXON, and AMY LINDE on their own behalf and on behalf of all others similarly situated, | CIVIL ACTION NO. 3:10-CV-0175 |
| Plaintiffs | (JUDGE CAPUTO) |
| v. | |
| NATIONAL CORRECTIVE GROUP, INC., (d/b/a "CORRECTIVE SOLUTIONS"), LEVINE LEICHTMAN CAPITAL PARTNERS, INC., LEVINE LEICHTMAN CAPITAL PARTNERS III, LP., and LEVINE LEICHTMAN CAPITAL PARTNERS III, LLC, | |
| and | |
| ANDREW J. JARBOLA III, Lackawanna County, Pennsylvania District Attorney, | |
| Defendants | |

## ORDER

**NOW**, this __30th__ day of November, 2010, **IT IS HEREBY ORDERED** that:

1. Defendant NCG's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The § 1983 claims against Defendant NCG are dismissed. The other claims are not dismissed.

2. Plaintiffs will conduct jurisdictional discovery before the Court decides Defendants LLCP and LLCP III's Motion to Dismiss .

3. Defendant Jarbola's Motion to Dismiss is **GRANTED** and he is **DISMISSED** from the case.

                                                   /s/ A. Richard Caputo
                                                   A. Richard Caputo
                                                   United States District Judge